# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>SIMEON MORENO,<br><br>　　　　　　　Debtor | Chapter 13<br>Case No. 08-17715-FJB |

### MEMORANDUM OF DECISION ON
### MOTION OF PROPERTY ASSET MANAGEMENT, INC.
### FOR RELIEF FROM THE AUTOMATIC STAY

In the Chapter 13 case of debtor Simeon Moreno, Property Asset Management, Inc. ("PAM"), claiming to be the assignee of a mortgage originally given by the debtor to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for lender GE Money Bank, moved for relief from the automatic stay to foreclose the mortgage. Moreno initially opposed the motion but then withdrew his objection, whereupon the Court granted the relief requested. Months later, at Moreno's request, the Court vacated the order granting relief from stay and scheduled an evidentiary hearing on the Motion for Relief from Stay for the limited purpose of reconsidering whether PAM had an interest in the mortgage it sought to foreclose and, to that extent, standing to seek relief from stay.[1] Having held the evidentiary hearing and received proposed findings and conclusions, the Court now enters the following findings of fact and conclusions of law.

### Findings of Fact and Procedural History

On January 23, 2007, Moreno executed a promissory note in the principal amount of $492,000, payable to lender GE Money Bank. GE subsequently endorsed the note in blank, whereupon possession of the note was transferred through a series of holders and ultimately to Lehman Brothers Holdings, Inc. ("LBHI"), who held the note when PAM filed its Motion for Relief

---

[1] All other issues were resolved upon entry of the original order granting relief from stay. No cause has been adduced to revisit any but the narrow issue of standing.

from Stay and continues to hold it now.[2]  LBHI, through one of its employees and through LBHI's attorney, who not coincidentally also is PAM's attorney in the present matter, produced the original note at the evidentiary hearing.  PAM is not now a holder of the note or an entity for whose benefit another has held the note.

To secure the promissory note, Moreno gave a mortgage on the real property at 5 Maple Street, West Roxbury, Massachusetts (the "Property") to MERS as nominee for GE (the "Mortgage").  The Mortgage specifies that MERS "is a separate corporation that is acting solely as a nominee for [GE] and [GE's] successors and assigns.  MERS is the mortgagee under this security instrument."  The Mortgage further provides that Moreno

> does hereby mortgage, grant and convey to MERS (solely as nominee for [GE] and [GE's] successors and assigns) and to the successors and assigns of MERS, with power of sale, the [Property]. . . .  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for [GE] and [GE's] successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of [GE] including, but not limited to, releasing and canceling this Security Instrument.

The Mortgage was duly recorded.

MERS administers an electronic registry to track the transfer of ownership interest and servicing rights in mortgage loans.  With respect to certain loans of which its members are the beneficial owners, MERS also serves as mortgagee of record and holds legal

---

[2]  Moreno contends that LBHI, which is in bankruptcy proceedings of its own, may have sold its interest in the note through a court-approved sale in its bankruptcy case.  However, Moreno does not contend that possession of the note has passed from LBHI to the alleged purchaser (or any nominee of the purchaser), and therefore the alleged possible sale is irrelevant, as possession undisputedly remains in LBHI.  In any event, Moreno attempted to establish the fact of the alleged sale by designating certain documents on the docket of the LBHI case and asking the Court to take judicial notice of these and then to find them on its own and to determine from them whether the promissory note in question was among the assets transferred.  Having found the alleged sale to be irrelevant, the Court declined to take judicial notice of the bankruptcy documents.  However, the proffer also failed for two additional reasons:  first, that Moreno did not take a position as to whether a sale did occur, only that the Moreno note *may have been* among those transferred in the sale; and second, even if the court had taken judicial notice as requested, it remained Moreno's obligation, which he has not fulfilled, to produce the documents in question and to explain in the first instance how one would conclude from them that the asset in question was among those transferred.

title to the mortgages in a nominee capacity. MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one member of the MERS system to another. When the beneficial interest in a mortgage loan is transferred from one member of the MERS system to another, MERS tracks the transfer through its internal records. When rights are transferred from a member of the MERS system to a non-member, MERS executes and records an assignment from MERS to the non-member.

To facilitate the execution of the assignments from MERS, MERS designates "certifying officers," who are typically employees of MERS member firms. MERS authorizes these employees, through formal corporate resolutions, to execute assignments on behalf of MERS. On or about January 6, 2005, MERS, through a document entitled Corporate Resolution and issued by its board of directors, authorized Denise Bailey, an employee of Litton Loan Servicing L.P. ("Litton"), a member of MERS, to execute such assignments on behalf of MERS. In the language of the authorizing document (the "MERS Authorization"),[3] Ms. Bailey was authorized to, among other things, "assign the lien of any mortgage loan naming MERS as the mortgagee when the Member [Litton] is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown [sic] to be registered to the Member"[4]; and Ms. Bailey was further authorized to "take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS)." In each instance, Bailey's authority to act is dependent on the existence of a specified relationship of Litton, the MERS member for whom she is employed, to the loan in question.

---

[3] MERS Corporate Resolution, attached to Bailey Affidavit as Exhibit 1.

[4] The grammatical difficulty in this second clause is native to the authorizing document.

3

The Moreno loan was entered into the MERS tracking database in the ordinary course of business. Thereafter, MERS tracked the beneficial interest in the loan. The beneficial interest was transferred from G.E. Money Bank to WMC Mortgage Corporation; then, on September 19, 2007, from WMC Mortgage Corporation to Aurora Bank FSB (formerly known as Lehman Brothers Bank FSB), and then, on July 30, 2008, from Aurora Bank FSB to LBHI. Aurora Bank was at all relevant times a wholly-owned subsidiary of LBHI.

With respect to the Moreno Mortgage, MERS remained the mortgagee of record until, on or about April 30, 2008, MERS, acting through Denise Bailey, assigned the Mortgage to PAM. At the time, Aurora Bank FSB was the beneficial owner of the loan. In executing the MERS assignment to PAM, Ms. Bailey purported to be acting under her MERS Authorization.

The MERS Authorization limited Ms. Bailey's authority to act for MERS to matters with respect to which Litton was involved in at least one of the ways specified in the above-quoted language from the MERS Authorization. There is evidence, and I find, that Aurora Bank FSB had requested that Litton transfer the loan from MERS to PAM in anticipation of foreclosure. However, PAM has adduced no evidence that Litton had any specified connection to this loan at the time it executed this assignment. There is no evidence that Litton was then (or at any time) the servicer of the loan for Aurora Bank or that Litton was registered as servicer of the loan in the MERS system.[5] (PAM does not contend that Litton was the holder of the promissory note or

---

[5] The original affidavit of Scott Drosdick includes the following two sentences:

> By Master Servicing Agreement dated February 1, 1999, LBHI engaged Aurora Bank FSB (f/k/a Lehman Brothers Bank FSB), to master service, among other things, the Loan [the Moreno loan]. In turn, Aurora Bank FSB engaged Litton pursuant to a Flow Subservicing Agreement dated October 1, 2007, to service the loan."

By an amendment to the affidavit and in testimony, Drosdick later amended his affidavit to correct this passage by striking Aurora Bank FSB from the first sentence and in its place inserting Aurora Loan Services LLC. Drosdick did not expressly change the second sentence, but that sentence, which begins with the critical words "in turn," would be nonsensical unless the same substitution—Aurora Loan Services LLC for Aurora Bank FSB—were also made in the second sentence. Therefore, though the second sentence might perhaps be read in isolation as evidence that Litton was servicing the loan for Aurora Bank FSB at the time when Bailey executed the assignment, that sentence cannot credibly be so construed.

4

the owner of the beneficial interest in the loan.)

Scott Drosdick, a vice-president of LBHI and witness for PAM at the evidentiary hearing, testified that Aurora Bank's instruction to Litton to transfer the mortgage to PAM was later "ratified by LBHI." Drosdick did not explain what he meant by this, precisely how and when this ratification occurred. Absent such evidence and clarification, this testimony is too vague to have any definite meaning; accordingly I give it no weight.

By a master servicing agreement dated February 1, 1999, LBHI engaged Aurora Loan Services, Inc., now known as Aurora Loan Services LLC ("ALS"), as master servicer of certain loans, including eventually the present Moreno loan. In turn, ALS engaged Litton to service certain loans, including eventually this same loan.

After Bailey executed the MERS assignment to PAM, Bailey executed another assignment of the same mortgage from MERS to LBHI. This second assignment was never recorded; nor is there evidence that it was ever delivered by MERS to LBHI.

Moreno filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 13, 2008, commencing the present bankruptcy case. On November 13, 2008, LBHI, acting through its servicer Litton Loan Servicing, LP, filed a proof of claim in this case; the proof of claim asserts a claim, secured by real estate, in the total amount of $530,168.04, the same secured claim as PAM now seeks relief from stay to enforce by foreclosure. On the proof of claim form itself, Litton actually identifies the creditor claimant as simply "Litton," but on an explanatory document attached to the proof of claim form, Litton states that the claim is filed by "Litton Loan Servicing, LP, as Servicing Agent for Lehman Brothers Holdings Inc." The proof of claim does not mention PAM or indicate in any way that the mortgage securing the claim is held by anyone other than LBHI.

On March 31, 2009, and at LBHI's direction, PAM filed the present motion for relief from the automatic stay, seeking relief from the automatic stay to foreclose and to preserve its rights as to a potential deficiency. PAM intends and is obligated to remit the proceeds of the intended

5

foreclosure sale to Aurora Loan Services LLC, as servicer for LBHI.  Regarding ownership of the note and Mortgage, PAM stated in the motion only that it was the holder of a mortgage originally given by Moreno to MERS, that the mortgage secured a note given by Moreno to GE, and that MERS had assigned the mortgage to PAM.  PAM did not indicate that LBHI was the current holder of the note or that it held the mortgage as nominee for the benefit of LBHI or of any other entity.  The motion did not mention LBHI.

Moreno filed a response to the motion, in essence an objection, in which he expressly admitted PAM's allegation that his prepetition arrearage was $39,442.49 and, by lack of denial, tacitly admitted that Moreno was some four months in arrears on his postpetition payments under the mortgage.  By these allegations and admissions, PAM has established that Moreno is in default on his mortgage loan obligations; the Court rejects Moreno's request for a finding that PAM has not established a default.  The response made no issue of PAM's standing to foreclose or to seek relief from stay and did not dispute PAM's allegations regarding ownership of the note and Mortgage.  In any event, before a hearing was held on the motion, Moreno, through counsel, withdrew his objection.  Consequently, on April 28, 2009, and without a hearing or any review of apparent inconsistencies in the bankruptcy record concerning ownership of the mortgage and note, the court granted PAM relief from the automatic stay to foreclose and to preserve its rights as to a potential deficiency.

PAM had not yet foreclosed when, on December 2, 2009 and by new counsel, Moreno filed an adversary complaint against PAM and, with it, a motion for preliminary injunction.  The complaint sought among other things (i) an order invalidating the mortgage on account of irregularities in its origination and (ii) a declaration that PAM was not the holder of the mortgage and note.  In the motion for preliminary injunction, Moreno asked that the foreclosure be stayed, or that the automatic stay be reimposed, pending disposition of the adversary proceeding.  On December 7, 2009, after a hearing on the motion for preliminary injunction, the Court found that the motion was, in part, essentially one to vacate the order granting relief from the automatic

6

stay, vacated that order, and scheduled an evidentiary hearing on the motion for relief. The order specified that the sole issue at the evidentiary hearing would be PAM's standing to seek relief from the automatic stay, all other issues under 11 U.S.C. § 362(d) being deemed established. After discovery, the evidentiary hearing was held on April 8, 2010, and, with the submission of proposed findings and conclusions, the matter was then taken under advisement.

**Discussion**

As the party seeking relief from stay to foreclose a mortgage on the debtor's property, PAM bears the burden of proving that it has authority under applicable state law to foreclose the mortgage in question and, by virtue of that authority, standing to move for relief from the automatic stay to foreclose. PAM contends that it has such authority and standing because, although it does not hold the promissory note that the mortgage secures, it does have title to the mortgage itself; and it holds that title as nominee of and for the benefit of the note holder, LBHI, and is foreclosing for LBHI. In these circumstances, PAM contends, a mortgagee has a right under Massachusetts law to foreclose for the benefit of the note holder and therefore standing to move for relief from stay to foreclose. The Debtor objects, arguing (among other things) that Massachusetts law prohibits foreclosure by one who holds only the mortgage and not the note it secures. I need not address the merits of this and other objections because, even if the theory is a valid one, it requires proof that PAM is the present title holder of the mortgage, and PAM has not carried its burden in this regard.

To show that it presently holds the mortgage, PAM must show a valid assignment of the mortgage from MERS to itself. PAM contends that it holds the mortgage by assignment from MERS. Accordingly, PAM must show that the assignment, which was executed for MERS by Denise Bailey, was within the scope of Bailey's limited authority to act for MERS.

Ms. Bailey's authority to act for MERS is defined in the MERS Authorization in seven enumerated paragraphs. In each, Ms. Bailey's authority to act is dependent on the existence of

7

a specified relationship of Litton, the MERS member by whom she is employed, to the loan in question.  PAM has submitted no evidence of the existence of any such relationship.  The beneficial owner of the loan at the time of the assignment was Aurora Bank FSB, but there is no evidence that Litton was at the time the servicer of the loan for Aurora Bank FSB or was registered with MERS as such.  The Court does not find that Aurora Bank FSB had not retained Litton as its servicer; there is simply no evidence on the issue.  But the burden is on PAM to prove that it had, and PAM has not adduced evidence to that effect.

Accordingly, by a separate order, the Court will deny PAM's motion for relief from the automatic stay without prejudice to renewal upon proper proof.

Date:  May 24, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge